Rich, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner’s final rejection of claims 5 through 8 of appellant’s application serial No. 148,709, filed March 9, 1950, directed to oil seals. No claims have been allowed.
Claim 5 is illustrative of the appealed claims:
5. In a seal of the character described for press-fit installation, a centrally apertured sheet metal cup for metal-to-metal press-fit insertion in a bore about a shaft, said cup containing an annular packing member for coaction with the shaft, and said cup having its rim inwardly offset a substantial distance at one end for a portion only of its length, and a thick annular gasketing member of substantially non-eompressible but resiliently deformable solid rubber-like material, which gasketing member is of slightly larger outside diameter than the large diameter press-fit portion of the rim of the cup, said gasketing member being bonded along its inner periphery to the small diameter portion of the rim in rigidly backed association with the latter and in endwise abutment at one of its ends with the large diameter end of the rim, and said gasketing member terminating at its other end substantially flush with the corresponding end of the small diameter portion of the rim and being uneonfined substantially throughout its thickness at its said other end for free endwise deformation in that direction. (Emphasis ours.)
The references relied on were:
Victor, 2,208,482, July 16,1940.
Moxon (British), 569,821, June 11,1945.
Clay ton-Wright, 2,434,686, Jan. 20,1948.
*735 The alleged invention is directed to oil seals to be used between a housing bore and a relatively rotating shaft passing therethrough.
Applicant alleges in his specification that it was formerly the practice to provide such seals with cylindrical metal casings for installation with a press fit into the situs of use which had certain disadvantages, particularly oil leakage between the metal-to-metal contact surfaces. This, he said, was a problem others attempted to solve by using metal shells smaller than the housing bore and provided with a rubber-like rim to seal against the bore wall. This in turn is said to have had the disadvantage of loosening with time. He proposes a construction which allegedly retains the advantages and eliminates the disadvantages of each of the acknowledged prior art constructions.
The disclosed structure has the same sleeve-type shaft seal, for which no novelty is claimed, enclosed in a casing structure which differs in having a shorter than usual cylindrical metal portion for insertion in a bore with a press fit, adjacent which is a stepped down or smaller diameter cylindrical portion on which an annular sealing gasket is mounted. A radial' web portion joins the large and small cylindrical casing sections and the gasket rests on the small one abutting the web, being bonded to the adjacent metal surfaces. The only structural feature on which patentability is seriously predicated is the making of the gasket (to use the italicized language of claim 5 quoted above) “of slightly larger outside diameter than the large diameter press-fit portion of the rim of the cup.” Both parts are inserted, in use, into the same bore.
It seems very clear to us that if an annular gasket is to be used to create a fluid seal in an annular space, the gasket must perforce fit tightly in the space. When using rubber gaskets it is about as obvious an expedient as can be imagined to achieve a tight fit by making the rubber a little bigger than the space, as a cork is made bigger than the neck of a bottle and for the same reasons. This is what applicant did.
When the seal unit is press-fitted in a bore the annular gasket member is placed under presure and the resulting distortion produces a slight axial projection of its outer periphery or free .end beyond the plane of the end of the small diameter portion. The excess rubber, which is incompressible, must go somewhere and the free end of the gasket bulges out.
In the above structure, the press-fit of the sheet metal cup, or casing, has the function of keeping the unit as a whole in place while the rubber gasket member serves as a fluid sealing means and no doubt aids the securing function.
*736 The Moxon British patent discloses an oil seal for use between a shaft and the bore of a housing. The seal consists of a sheet metal casing having two cylindrical portions of different diameters, a radial web joining them, and an annular rubber gasket member bonded to the exterior of the small diameter portion and to the web. Applicant’s attorney admitted at oral argument (and he could not have done otherwise) that Moxon falls short of disclosing the claimed structure only in not having an explicit disclosure that his rubber gasket is of greater diameter than his.metal shell. Even without this admission, we would hold that the Moxon reference meets every positive structural limitation of the claims except that requiring the diameter of the annular gasket member to be of a greater diameter than that of the cylindrical shell portion of larger diameter.
The Victor patent dislcoses a similar seal whose metal casing has two cylindrical portions of different diameters with an annular rubber member vulcanized to the exterior of the small diameter portion. It is a somewhat closer reference than Moxon in that it has some things to say (as Moxon does not) on the sealing effect of the rubber member, which we will assume, arguendo, is not disclosed to be of any greater diameter than the shell. For example:
The fact that the resilient material * * * is also slightly compressed on application and which, furthermore, acts as a cork does when being positioned in a bottle, will eliminate and completely seal against any possible leaks which might occur between the adjacent metal portions.
With a teaching such as this, and there are others in the patent, we can see nothing unobvious in thickening the rubber gasket to make an even tighter seal if such should be desired.
But the question of unobviousness is put beyond a doubt in our minds by the Clayton-Wright patent disclosing a shaft seal comprising a metal plate having a press fit in a shaft housing and a rubber seal bonded to the plate having a greater diameter than the plate so that its periphery forms a sealing lip “to form a good sealing fit in the housing.”
We are bound to conclude that applicant’s claimed subject matter would have been obvious to a person having even less than “ordinary” skill in the relevant art and that it is not patentable. 35 U. S. C. 102, 103.
Appellant has built up an argument with much bold face type based on the fact that when his seal is placed in position and his gasket is consequently squeezed, the rubber is forced axially outwardly “and is adapted for endwise sealing engagement with the confronting face of an associated bearing race or other insert in the bore.” Such an effect is barely mentioned in the application as an *737 .incidental advantage and is not even illustrated but is now urged as a major feature incapable of production by the structures of the references. All it means is that the seal, in position, has an annular rubber surface which could abut a shoulder or the like. We see such rubber surfaces in all three of the references though they fail to mention their obvious presence. Insofar as this function is mentioned in the claims it is as a mere recital of an inherent property or result flowing from the use of a structure we have already found to be unpatentable. It avails applicant nothing.
The Board of Appeals decision is affirmed.
Jackson, J., Retired, recalled to participate.